STROH *v.* BAUMAN.

APPEAL AND ERROR—SUBROGATION.

Defendant appealed from the decree of the circuit court in chancery entered after the cause had been remanded for modification of the decree settling the affairs of an estate following an appeal to the Supreme Court. He claimed that he was charged with $377.74 for the benefit of complainant that was no proper obligation of and in no way related to the affairs of the estate; that the money was an advance by complainant for his personal benefit, in the adjustment of a private timber purchase and other similar deals. The decree entered on the first appeal contained the provision that complainant and appellant were entitled to liens on the property in question to the amounts of their respective contributions and that the parties should be entitled to be subrogated to the rights of creditors of the estate having liens upon the real property in question. And the final order provided that if it should appear that any part of the contributions of either party was not contributed for the benefit of the estate the court might make deductions and compute the proportions accordingly. The final decree was entered in the circuit court without making deductions and computing propor-

tions, as ordered by the appellate court, and it is *held* that
the decree should be modified to conform to the former
holding of this court, and a deduction be made under the
unconflicting testimony from the amount to be credited to
complainant.

Appeal from Ottawa; Cross, J.   Submitted April
14, 1915.   (Docket No. 83.)   Decided December 21,
1915.

Bill by Conrad Stroh against Joseph Bauman and
others to be subrogated to the rights of mortgagee on
property of the estate of Dominic O'Hearn.   From a
decree for complainant defendant Bauman appeals.
Modified.

*Farr, Kolyn & Farr* and *Smedley & Linsey*, for
complainant.

*Charles E. Soule* (*C. Edward Soule*, of counsel), for
defendant Bauman.

*Hatch & Raymond*, for other defendants.

STONE, J.   This is the second appeal in this case.
Upon the first appeal the opinion was written by Chief
Justice STEERE, and is reported in 176 Mich. 164 (142
N. W. 865).   That opinion contains such a full and
clear statement of the case and the position and rights
of the parties, that it will be only necessary to here
say briefly that Dominic O'Hearn died testate on Sep-
tember 7, 1898, owning a farm of 180 acres of land
in Ottawa county.   By his last will and testament he
gave and devised all his property, real and personal,
except a span of horses, to his wife, Margaret O'Hearn,
for life, and after her death the 120 acres south and
west of the State road to his son John O'Hearn for
life, and the 60 acres north and east of said road to
his son Martin O'Hearn for life, and after their death
to their heirs; also legacies of $500 each to his daugh-

ters Minnie and Agnes, and $1 each to his daughters
Lizzie and Maria, "to be paid from the proceeds of
the farm as soon as it will admit, or at the pleasure of
my wife, Margaret O'Hearn, should she survive that
long, but in no case shall a payment be put off to ex-
ceed the term of five years."   For money to pay the
debts and expenses of administration, mortgages were
given by the administrator by authority of the probate
court to Charles E. Chappell, $1,000 on the 60 acres
willed to Martin O'Hearn, and $1,050 on 80 acres of
the land willed to John O'Hearn.   The administrator
de bonis non, having obtained license therefor, sold a
strip of land 3 rods wide from the 60 acres north and
east of the State road and adjacent to it to an inter-
urban railway for $150, and to Frank O'Hearn 40
acres of the 120 which had been willed to John O'Hearn
for life.   Interest was not paid on the mortgages, and
foreclosure was had in chancery, and a decree taken by
Mr. Chappell, acting by the same solicitor who repre-
sented the complainant in this case.   The 60 and 80
acres were likely to be sold on the foreclosure, which
would close out the devisees of the land and the leg-
acies.   The legatee Minnie was the wife of complain-
ant, Stroh.   Defendant Bauman, a neighbor, had been
solicited to buy the 60 acres.   It was talked over be-
tween Stroh, John and Martin O'Hearn, and Bauman
that the latter should buy the 60 acres from Martin,
pay $2,200 for it on the mortgages, and Stroh was to
take a mortgage for $1,300 on John's remaining 80
acres and pay the rest of the mortgages and legacies,
and John was to deed one-half of the 80 acres to Mar-
tin to compensate him for his deeding the 60 acres to
Bauman to pay the mortgages.   After this talk they
met at Mr. Farr's office (Chappell's solicitor) on
March 19, 1904, at which meeting Martin O'Hearn
and wife deeded the 60 acres to Mr. Bauman by war-
ranty deed, which amount, $2,200, Mr. Bauman se-

cured Chappell on his mortgages. John deeded the undivided one-half of the 80 acres to Martin, and they two made a mortgage to Mr. Stroh for $1,300. Stroh paid the balance of the mortgages to Chappell, he paying $245.26, making the total amount of the mortgages $2,445.26. (The opinion gives this amount as $2,-309.99, and in settlement of the decree it was made $2,445.26 on account of interest being added, $3,425.26 being the amount given, with $2 added for legacies paid by Stroh.) Stroh paid the two $500 legacies to his wife and her sister, and $1 each to the other sisters, making $1,002 paid by him of the legacies, instead of $1,000, as stated in our decision.

All parties to this transaction acted in the honest belief that Martin and John O'Hearn were devised the land in fee. Stroh also paid at this meeting in Farr's office $30 to Mr. Farr and the rest of the money, making his $1,300 mortgage to Martin O'Hearn; in other words, he paid the balance of the mortgage to Chappell, $245.26; he paid the legacies, and paid Mr. Farr $30 and Martin O'Hearn $22.74. This makes paid by Bauman to Chappell for the 60 acres $2,200, and by Stroh to Chappell on mortgages $245.26, and by Stroh on legacies $1,002—total, $3,447.26—which is the amount decreed by the circuit court as paid on the valid liens against the estate.

The decree as settled in this court upon the former appeal contains the following recital:

"And it further appearing that on the 19th day of March, 1904, said complainant, Conrad Stroh, contributed the sum of $1,625 and defendant Joseph Bauman contributed the sum of $2,200 to the fund of $3,825, of which fund $3,445.26 was apparently applied in liquidation of valid liens against the said estate of Dominic O'Hearn, deceased, and that the said Conrad Stroh and Joseph Bauman became secured creditors of said estate to the amount of said liens, and that they are now entitled to liens against said estate in

proportion to their respective contributions thereto as hereinafter set forth."

The decree also contained the following provision:

"That for the purpose of a determination of the respective amounts of the liens of Conrad Stroh and Joseph Bauman, this cause may be placed on the calendar of the Ottawa circuit court, in chancery, for the November, 1913, or any subsequent term thereof, upon giving the usual notice of hearing required by the rules and practice of said circuit court, and said court shall, in such proceeding, determine the amount of the respective liens of said parties, said Conrad Stroh and Joseph Bauman to be entitled to a lien to the amount of their respective contributions to said fund of $3,-445.26 in proportion to the contributions to the fund of $3,825, of which said Joseph Bauman contributed $2,200 and the said Conrad Stroh contributed $1,625, subject to the following increases and deductions; that in the determination of said liens said court shall allow interest to said parties at the rates borne by the mortgages to which they are subrogated, and at the legal rates as to the legacies, from March 19, 1904, upon the amount of their proportionate contributions to said fund of $3,445.26; provided, however, that if it shall be made to satisfactorily appear that any part of said contribution of either of said parties was not contributed for the benefit of said estate, the court may make deductions and compute the proportions accordingly."

Upon the final hearing in the circuit court under the above reference and from which decree this appeal is taken, a controversy arose as to the amount which was contributed by the complainant for the benefit of the said estate. The supposed facts upon which the decree of this court is based with regard to a "fund" of $3,825, to which Mr. Bauman is held to contribute to Mr. Stroh's benefit beyond the $2,200 paid for the 60 acres and in payment of the obligations of the estate, are found in certain allegations in the original bill of complaint, and in the answer thereto, and in the stipulation filed upon the original hearing in the case. Upon

these supposed facts the decision and the decree of this court were made. By the decree from which this appeal is taken Mr. Bauman is held to contribute to Mr. Stroh a proportion of his payment, he paying $2,200 and Mr. Stroh $1,247.26 on the actual obligations of the estate, on the $3,825 "fund," made up of the $3,447.26 paid on the estate obligations and the $325 paid by Stroh for the timber deed from Martin and John O'Hearn, and $30 paid by him to Mr. Farr, and $22.74 paid by him to Martin O'Hearn, which, it is the claim of Mr. Bauman, were Stroh's own private deals with the parties, and not paid on the obligations of the estate in the total amount of $377.74. This brings us to the one matter contained in this appeal. The record states Mr. Bauman appeals only on matters decided in the final decree as follows:

(1) "From the combining of the $1,002 contributed by Stroh for the payment of legacies, on which the interest rate is 5 per cent., with the $2,200 contributed by Bauman and the $245.26 contributed by Stroh for the payment of the Chappell mortgages, on which the interest rate is 6 per cent. This combination benefits Stroh to the extent of more than $100 in interest, and deprives Bauman of same, which is contrary to the Supreme Court decree as to interest rates on the respective contributions of said parties."

(2) "From including in the amount to which Stroh is subrogated the $325 paid by Stroh for the timber deed; the $30 paid by Stroh to Mr. Farr for drawing papers; the $22.74 balance paid by Stroh to Martin O'Hearn. These amounts aggregate $377.74, which, with interest for ten years, is credited to Stroh and taken from Bauman contrary to the Supreme Court decree, none of said payments having been made for obligations of the Dominic O'Hearn estate."

Some incongruities or inconsistent clauses are to be found in the pleadings and stipulations of the parties and the finding by this court with reference to the "fund" of $3,825. It should be borne in mind that,

when the original bill was filed in this case, the object was to subrogate Mr. Stroh and Mr. Bauman to rights which it was claimed they had obtained by reason of paying the mortgages and the legacies which were a lien upon the estate of Dominic O'Hearn, deceased, and there was no conflict between them. In that bill Mr. Bauman is made a defendant; and, after alleging the payments of the mortgages and legacies, the fourteenth paragraph of the bill reads as follows:

"And your orator further says that thereupon the said sum of $2,200 so paid by the said Joseph Bauman and the said sum of $1,300 and $325 so paid by your orator were used and expended in the payment of said two mortgages and notes so given to the said Charles E. Chappell, and in the payment of the said legacies to the said four daughters of the said John (Dominic) O'Hearn, amounting to the sum of $1,002."

While by the decree of the court below, from which this appeal is taken, it is found, as a fact, that the liens which were paid were $3,447.26, consisting of the mortgages, with interest and costs, of $2,445.26, and legacies of the sum of $1,002, which were used for the purpose of discharging valid liens and claims against said estate, and that said Stroh and Bauman are entitled to a lien on the proceeds of the sale of the real estate belonging to said estate for that sum, yet by reason of including the $325 of the timber deal and other items which were not a lien upon the estate the so-called "fund" of $3,825 is created.

It is true that the bill alleges that at the meeting on the 19th day of March, 1904, the arrangement was made by which Martin O'Hearn was to convey to Bauman the premises devised to him in said will for the sum of $2,200 and the timber upon a portion of said premises to "your orator" for the sum of $350, etc., and the answer of Bauman admits the correctness of this allegation. Again, the fourteenth paragraph of

the original bill, which we have above quoted, is also admitted by Bauman to be true; and yet it nowhere appears in this record that the $325 paid by Stroh in the timber deal and the other items named were ever a lien against the estate of Dominic O'Hearn. Upon the original hearing of the case a stipulation was filed containing substantially the same statement. Upon turning, however, to the opinion of this court, we find it was distinctly held that the timber deed to Stroh made by John and Martin O'Hearn authorized waste of the fee, and was invalid. Turning to the proceedings upon the original hearing in the circuit court we find the following:

"*The Court:* That timber deal, as I understand you to say, that didn't amount to anything, anyway?

"*Mr. Farr:* No; that didn't amount to anything.
\* \* \*

"*Mr. Farr:* The point is this, as I have always looked at it, of course, there could be no subrogation in this case except as to money that was used to pay the debts of the estate, and those debts, so far as they are in proof here, as I understand as paid, was this Chappell mortgage and these legacies. I don't claim anything more than that, because I don't think we have any proof of any."

Upon the original hearing the matters that seemed to be most in controversy were the amount of improvements which had been made upon the premises by Mr. Bauman and the value of the use of the premises, and the amount paid for taxes. Upon settlement of the decree in this court the following clause was inserted upon the motion of counsel for defendant Bauman, to wit:

"Provided, however, that if it shall be made to satisfactorily appear that any part of said contribution of either of said parties was not contributed for the benefit of said estate, the court may make deductions and compute the proportions accordingly."

The case having gone back to be heard upon these matters, it appears by the uncontradicted testimony of both Stroh and Bauman that the $325 had nothing to do with the liens against the estate of Dominic O'Hearn. Upon that subject Stroh testified, among other things, as follows:

"I recollect the conference at Mr. Farr's office March 19, 1904; was present at it. We were trying to settle the estate and straighten out the 80 and 60 with John and Martin O'Hearn. I recollect how it was settled. I furnished $1,300, and Bauman $2,200. I got a mortgage for my $1,300 from John and Martin O'Hearn. No other money was raised at that time. I did not contribute anything more at that time. John O'Hearn sold timber to Adams of Grand Rapids before we made this deal. I paid Adams and Hart and took a second mortgage on the place signed by John and Martin O'Hearn together. That was not discussed at the meeting at Farr's office. That was made about a year or so afterwards, I believe. I can't tell exactly when it was. I believe it was discussed at Farr's office. I don't understand that it was a part of the fund that we were raising there. I don't think we talked about it then. I don't remember if we did. I don't remember exactly that it was talked there that they had a timber deed on that property. I think it was a year or so later when we talked the timber deed over. * * * There was no money raised at that time. That $325 was not paid to anybody at that time. I paid it to Adams and Hart, of Grand Rapids, implement dealers there, but it is all recorded. I don't know just when it happened. I ain't certain that that $325 was a part of the discussion in Farr's office when the other deal was fixed up. I know we fixed it up afterwards; I don't know how long. I let them have the $325."

On cross-examination he testified:

"I don't remember if we talked over raising this $325 at the meeting at Farr's office March 19, 1904. I don't remember if we talked about it; we might have. I don't remember whether the $325 for the timber deed, in order to clear the item which Hart and Adams had against it, was talked over and considered or not

at this transaction of March 19, 1904. I don't think it was a mortgage of $325. I think I furnished a little more money. I can't tell what the mortgage was now. What I took for the $325 was timber deed signed by John and Martin and Martin's wife. It is on record here. I don't think there was a mortgage for $325. * * * I paid at the conference at Farr's office $1,002 legacies—$500 to one daughter, my wife; $500 to Agnes, another daughter; and $1 each to the two other daughters. Whatever was due to Dr. Chappell was paid; I don't remember how much. Bauman paid just about $2,200. I paid the rest. Whatever it was we paid and settled it that way. They settled it up, paying the debts against the old man O'Hearn estate and legacies. The $325 timber deal was a matter I settled for John O'Hearn. He had that money from Adams and Hart. That was not paid on any of the debts of the estate, but John sold the timber and gave Adams and Hart a timber deed. I paid Adams and Hart the money, and they turned the timber deed over to me, and later I took a mortgage from John [and] Martin for $600, and gave up the timber deed, and I paid them some money, whatever that figured up, interest and all. There was nothing in the timber deed except John had the money from Adams and Hart and I took it up. I think they owed some debt there. The Mrs. [Margaret O'Hearn] was alive then. I think they owed probably $100 or $200, and Adams and Hart gave them the balance in money. They owed for a horse or tools, or something like that. It was not the old man O'Hearn's debt at all; it was a debt on the O'Hearn estate is all."

Mr. Bauman testified to substantially the same state of facts, and later Mr. Stroh was recalled, and testified further as follows:

"I heard Bauman just testify as to what his understanding was with reference to the meeting at Mr. Farr's office in 1904. That is my understanding of it. My understanding is that we were together to raise the money to take care of the obligations of the estate —the two legacies and the mortgages."

It will be observed that there was no conflict in the testimony of these parties with reference to this mat-

ter. The facts are shown clearly that at the meeting at Mr. Farr's office there was no "fund" of $3,825 raised at all; that the "timber deed" was not considered, but was an after consideration and a deal between Mr. Stroh and John and Martin O'Hearn, in which Mr. Bauman had no interest; that deed bore date March 22, 1904, and was acknowledged March 26, 1904; that $2,200 was paid by Bauman and $245.26 by Stroh on the mortgages, and the $1,002 was paid by Stroh for the legacies, making a total of $3,447.26 which was paid on the obligations of the estate, and that amount only. The $30 paid to Mr. Farr, the $22.74 paid to Martin O'Hearn, and $325 for the timber deed paid by Stroh—total, $377.74—were paid by Stroh in his private deals, and are not a part of any valid claims against the estate.

The court below, after hearing this testimony, did find, as we have above stated, that the amount paid on the liens was $3,447.26 as valid liens against said estate; and it must be said that this is the equivalent of finding that no more was paid as valid liens and claims against said estate; and yet, losing sight of the provision in the decree as settled by this court, and instead of giving Mr. Bauman 6 per cent. on the mortgages paid by him to which he is subrogated as provided in the decree, and Mr. Stroh 5 per cent. on his legacies paid, the amount paid on the mortgages, $2,445.26, and $1,002 on the legacies are figured at 6 and 5 per cent. to March 30, 1914, the date of the decree, and bunched together into one sum of $5,421.38, and Mr. Stroh is given 1625/3825 and Mr. Bauman 2200/3825 of same, being $2,303.21 and $3,118.17, respectively. This error takes away from Mr. Bauman and gives to Stroh $57.24 from the 6 per cent. interest which Mr. Bauman is entitled to on the mortgage to which he is subrogated. Instead of making deductions and computing proportions as required by the decree of

this court, and as shown by the uncontradicted evidence that the $377.74 paid by Stroh to make the $3,825 was not paid for the benefit of the estate, the provision in the decree of this court is disregarded as though this proviso was not contained therein. By this computation Mr. Bauman is compelled to lose, and his money is given to Stroh in the sum of $348.02, making, with the $57.24 in the error in interest, $405.26. It is for the correction of this error that Mr. Bauman has appealed.

It seems to us, upon an examination of this entire record, that the learned trial judge did not "make deductions and compute proportions accordingly," as directed in our decree, but the computation is made as though no such provision was contained in the decree. This computation takes nothing from the O'Hearn estate in addition to the circuit court decree. It takes that amount of money ($405.26) from Mr. Stroh and gives it to Mr. Bauman. The amount, therefore, to be deducted from Mr. Stroh's final credit and added to Mr. Bauman's final credit, should be the sum of $405.26.

The decree of the court below will be so modified, and in all other respects will stand affirmed. The defendant Bauman will recover his costs in this court from the complainant.

BROOKE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

This case was originally assigned to the late Justice McALVAY.